**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| TEXAS FARMERS INSURANCE COMPANY, a/s/o KIMBERLY SHERRON, <br>        Plaintiff <br><br> v. <br><br> ZILMET USA, <br>        Defendant | § § § § § § § § § § | CIV ACT. NO: 4:23-cv-1134 |

**PLAINITFF'S ORIGINAL COMPLAINT**

COMES NOW Texas Farmers Insurance Company, as subrogee of Kimberly Sherron ("Plaintiff"), and complains of Zilmet USA ("Defendant"), respectfully showing the Court as follows:

### I.  PARTIES

1. Plaintiff is a domestic corporation with its principal place of business in California.  Plaintiff is licensed by the State of Texas to issue insurance policies within Texas.   It is a citizen of both Texas and California.

2. Defendant Zilmet USA is incorporated in Maryland with its principal place of business in Rhode Island.  It is therefore a citizen of both Maryland and Rhode Island.  Defendant does not maintain a registered agent with the State of Texas and may therefore be served by serving the Texas Secretary of State, who will serve Defendant at its corporate address of 400 Frenchtown Road, East Greenwich, RI 02818.

## II.  JURISDICTION AND VENUE

3. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states; and the amount in controversy exceeds $75,000. Venue is proper in this district because the damages occurred to real property located in this District.  This Court has jurisdiction over Defendant because Defendant placed its products in the stream of commerce in the State of Texas, availing itself of its jurisdiction.

## III.  STATEMENT OF FACTS

4. On or about December 25, 2021, a water leak occurred within the residence owned by Kimberly Sherron ("the Insured"), located at 2463 Greymoore Dr., Frisco, Texas 75034 ("the Property").  At the time of the leak, Plaintiff Texas Farmers Insurance Company had in full force and effect a homeowners policy issued to the Insured for damages to the Property, including damages for the water leak.  The leak resulted in damages to the structure, contents, and additional living expenses incurred by the Insured while the Property was being repaired.

5. The Insured presented a claim to Plaintiff under the homeowners policy. Pursuant to the terms of the policy, Plaintiff paid $178, 724.88 (less the $3,480.00 deductible paid by the Insured).  Pursuant to this payment and the terms of the policy, Plaintiff is both equitably and contractually subrogated to the rights of the Insured to bring this action against Defendant.

6. An investigation and inspection determined that the cause of the water leak was the failure of an expansion tank, model HYDRO-PLUS Serial No. 35907 ("the Tank"), manufactured by Defendant Zilmet USA.

7. At all relevant times, the Tank – including its component parts – was not modified, changed, altered, or abused by the Insured or anyone else.

8. Defendant designed, fabricated, manufactured, tested, inspected, marketed, distributed, sold, delivered, and/or otherwise placed the Tank into the stream of commerce in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

## IV.  CLAIMS

### COUNT I – NEGLIGENCE

9. Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

10. The damages described herein were the direct and proximate result of the negligence of Defendant – including negligent acts and/or omissions as performed by and through its agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a)    failing to exercise reasonable care in the design, manufacturing and/or marketing of the Tank, including but not limited to negligently …

        (1)    failing to competently design, fabricate, and test the Tank in a safe and appropriate manner;

      (2)    failing to competently supervise the selection of materials used in the fabrication and testing of the Tank in a safe and appropriate manner;

      (3)    failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, selection, fabrication, and testing of the Tank;

      (4)    failing to properly monitor the work of all agents, and/or employees during the design, selection, fabrication, and testing of the system to ensure compliance with applicable best practices and manufacturer instructions; and/or

      (5)    failing to adequately market the Tank by providing clear instructions for the maintenance of the Tank and associated warnings, dangers, and potential risks of harm associated with the use and care of the Tank.

11.    As a direct and proximate result of Defendant's negligent acts or omissions, the Property was damaged and additional expenses were incurred in an amount in excess of $150,000.00.

## COUNT II – STRICT LIABILITY

12.    Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

13.    At all relevant times, Defendant was engaged in the business of designing, testing, inspecting, assembling, manufacturing, selling, distributing and/or otherwise placing into the stream of commerce expansion tanks, and specifically designed, tested, inspected, assembled, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Tank that failed and caused the water leak at issue.

14. The Tank was not modified, changed, altered or abused by the Insured prior to or during her use.

15. Defendant knew and intended that its expansion tanks would be used by consumers such as the Insured, and knew of the specific uses, purposes, conditions and requirements to which the Tank would be put.

16. Defendant designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Tank described herein in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

17. Defendant designed, tested, inspected, manufactured, sold, distributed and/or otherwise placed the Tank into the stream of commerce in a defective condition, unreasonably dangerous to the Insured and the Property. A safer alternative design existed at the time that was available and economically viable, without diminishing the utility of the product, and said safer alternative design would have in reasonable probability prevented the damages in question, or greatly reduced their severity.

18. Defendant knew, or should have known, that the Tank would, and did, reach the Insured and/or prior owner of the Property without substantial change in the condition in which it was originally manufactured and sold. The Tank was not materially altered in any way that would affect the dangerous conditions caused and created by Defendant.

19.     On December 25, 2021, the Tank was in use in the normal, ordinary and intended manner, and for its normal, ordinary and intended purpose.

20.     The aforementioned defects consisted of:

        a.     design defects;
        b.     manufacturing defects;
        c.     component defects;
        d.     use and/or installation instructions, and/or warnings defects; and/or
        e.     a failure to warn of the design, manufacturing, and/or component defects, and/or improperly provided warning and/or safe use instructions.

These defects or defective conditions existed at the time the Tank left Defendant's possession and/or control and were the producing cause of the water leak described herein.

21.     For these reasons, Defendant is strictly liable for the damages claimed herein.

## COUNT III – BREACH OF WARRANTY

22.     Plaintiff incorporates all of the foregoing paragraphs as though they were restated herein.

23.     Defendant breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code ("UCC") and applicable Texas law in that the Tank was not fit for the particular purpose for which such products are used.

24. In addition, Defendant breached the implied warranty of merchantability as set out in the UCC and applicable Texas law in that the Tank was not fit for the ordinary uses for which such products are used.

## V. DAMAGES

25. As the direct and proximate result of the Defendant's negligence; strict liability; and/or breach of both express and implied warranties, the Property and the Insured sustained damages of $178, 724.88 (which includes the $3,480.00 deductible paid by the Insured). Plaintiff seeks the recovery of its Insured's deductible per the terms of the policy.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that judgment be entered in Plaintiff's favor awarding the following relief:

    a. Actual damages of $178, 724.88;

    b. Pre-judgment and post-judgment interest as allowed by law;

    c. Cost of suit;

    d. Attorney's fees for breach of warranty; and

    e. All other relief, in law and in equity, to which Plaintiff may be entitled.

[SIGNATURE BLOCK ON THE FOLLOWING PAGE]

Respectfully submitted,

/s/ Laura D. Schmidt
Laura D. Schmidt
SBN: 22142300
**KELLY, SMITH & SCHMIDT, P.C.**
5700 Tennyson Pkwy. Ste. 300
Plano, TX 75024**
(972) 848-7300
(713) 861-7100
schmidt@kellysmithpc.com

*\*\*all mailed correspondence should be directed to the Houston office, KELLY, SMITH & SCHMIDT, P.C. 12621 Featherwood Dr., Ste. 150 Houston, Texas 77034*